Case Nos. 09-15025 and 09-15051

IN THE UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

---

**JOHN A. WAGNER, Director of the California Department of Social Services, in his official capacity; GREG ROSE, Deputy Director of the Children and Family Services Division of the California Department of Social Services, in his official capacity,**

Defendants and Appellants,

**v.**

**CALIFORNIA STATE FOSTER PARENT ASSOCIATION, CALIFORNIA STATE CARE PROVIDERS ASSOCIATION, and LEGAL ADVOCATES FOR PERMANENT PARENTING,**

Plaintiffs and Appellees.

---

On Appeal from the United States District Court
Northern District of California
No. C 07-5086 WHA
The Honorable William Alsup, Judge

## APPELLANTS' OPENING BRIEF ON CROSS APPEAL

EDMUND G. BROWN JR.
Attorney General of the State of California

SUSAN M. CARSON
Supervising Deputy Attorney General
State Bar No. 135875

GEORGE PRINCE
Deputy Attorney General

455 Golden Gate Avenue, Suite 11000
San Francisco, CA 94102-7004
Telephone: (415) 703-5580
Facsimile: (415) 703-5480

Attorneys for Defendants and Appellants

# TABLE OF CONTENTS

**Page**

JURISDICTIONAL STATEMENT .................................................. 2

    A.  Appellate Jurisdiction. ........................................... 2

    B.  Timeliness of Appeal. ............................................ 2

STATEMENT OF ISSUES .......................................................... 2

STATEMENT OF THE CASE ...................................................... 3

    A.  Nature of the Case. ................................................ 3

    B.  Defendants' Motion To Dismiss And District Court's
        Decision. ............................................................... 4

STATEMENT OF FACTS ............................................................ 6

SUMMARY OF ARGUMENT ...................................................... 6

STANDARD OF REVIEW ............................................................ 7

ARGUMENT .............................................................................. 7

    I.   THE DISTRICT COURT ERRED WHEN IT HELD THAT
         PLAINTIFFS HAVE A PRIVATE RIGHT OF ACTION
         UNDER PROVISIONS OF THE CHILD WELFARE ACT ..... 7

        A.  A Plaintiff Cannot Maintain An Action To Enforce A
            Federal Statue Under Section 1983 Where Congress's
            Intent To Confer An Individual Right Is Not Clear And
            Unambiguous.

             ............................................................................. 7

i

## TABLE OF CONTENTS  (continued)

**Page**

    B.  The Provisions of The Child Welfare Act At Issue Here
       Do Not Contain Rights-Creating Language.       13

CONCLUSION       25

# TABLE OF AUTHORITIES

**Page**

**Cases**

*31 Foster Children v. Bush*
    329 F. 3d 1255 (11th Cir. 2003)           10, 20, 21, 23

*Alexander v. Sandoval*
    532 U.S. 275 (2001)           10

*ASW v. Oregon*
    424 F.3d 970 (9th Cir. 2005)           23

*B.H. v. Johnson*
    715 F. Supp. 1387 (N.D. Ill. 1989)           20

*Blessing v. Freestone*
    520 U.S. 329 (1997)           8, 9, 12, 19, 25

*California Alliance of Child and Family Services v. Allen*
    459 F. Supp.2d 919 (N.D. Cal. 2006)           5, 22-24

*Cannon v. University of Chicago*
    441 U.S. 677 (1979)           10, 11

*Charlie H. v. Whitman*
    83 F. Supp.2d 476 (D.N.J. 2000)           20, 22

*Fireman's Fund Ins. Co. v. City of Lodi, California*
    302 F.3d 928 (9th Cir. 2002)           7

*Foreman v. Heineman*
    240 F.R.D. 456 (D. Neb. 2006)           21, 24

*Gonzaga University v. Doe*
    536 U.S. 273 (2002)           5-8, 10, 11, 16, 17, 19-21, 25

iii

## TABLE OF AUTHORITIES  (continued)

**Page**

*Missouri Child Care Ass'n v. Cross*
    294 F.3d 1034 (8th Cir. 2002)    24

*Olivia Y. v. Barbour*
    351 F. Supp.2d 543 (S.D. Miss. 2004)    22

*Pennhurst State School and Hospital v. Halderman*
    451 U.S. 28 (1981)    8

*Price v. City of Stockton*
    390 F.3d 1105 (9th Cir. 2004)    5, 18, 19, 22

*Suter* v. *Artist M.*
    503 U.S. 347 (1992)    12

*Sylvas v. E\*Trade Mortgage Corp.*
    514 F.3d 1001 (9th Cir. 2008)    7

*Wilder* v. *Virginia Hosp. Ass'n*
    496 U.S. 498 (1990)    12

*Wright v. Roanoke Redevelopment and Housing Authority*
    479 U.S. 418 (1987)    12

**Statutes**

20 U.S.C.
    § 1681(a)    10

28 U.S.C.
    § 1291    2

42 U.S.C.
    § 670    3, 13

## TABLE OF AUTHORITIES  (continued)

**Page**

§ 671(a)     13, 14, 20

§ 672     5, 14, 19, 21, 24

§ 672(a)(1)     14

§ 673(a)     23

§ 675(4)     3, 4, 15, 17, 21-24

§ 675(5)     20, 21

§ 675(D)     20

§ 675(E)     20

§ 1320a-2a(a)(3)     13, 17

§ 1983     2, 4, 7-9, 21-23, 25

§ 2000d     10

**Rules**

45 C.F.R.
    § 1356.21     15

    § 1356.21(a)     15

    § 1356.21(b)     15, 16

Fed. Rules Civ. Proc.
    Rule 12(b)(6)     7

v

## JURISDICTIONAL STATEMENT

**A.      Appellate Jurisdiction**.

This Court has jurisdiction pursuant to 28 U.S.C. section 1291 based on the District Court's entry of judgment on December 4, 2008.  The District Court denied the motion to dismiss of defendants/appellants on January 22, 2008. The District Court granted in part plaintiffs' motion for summary judgment and entered judgment on October 21, 2008.

**B.      Timeliness of Appeal.**

The judgment was entered December 4, 2008.   Appellants filed their notice of appeal on December 24, 2008.  This appeal is timely pursuant to Federal Rules of Appellate Procedure, rule 4(a).

## STATEMENT OF ISSUES

1.      Whether the District Court erred when it denied appellants' motion to dismiss this action on the ground that plaintiffs did not have a private right of action to enforce provisions of the Child Welfare Act under 42 U.S.C. section 1983?

## STATEMENT OF THE CASE

### A.    Nature of the Case.

Plaintiffs, three organizations that represent foster parents and legal advocates for foster youth, brought this action, challenging the amount of foster care maintenance payments made to foster parents under various provisions of the Child Welfare Act (42 U.S.C. §§ 670 *et seq*.).  Plaintiffs allege that California did not adjust the rates paid to foster family homes between July 2001 and 2007 despite the fact that the California Necessities Index (CNI) had increased by 24.9 percent.  [ER-496.]  "Thus California has failed to cover the rising cost of and cost of providing the foster child's food, clothing, shelter, daily supervision, school supplies, incidentals, liability insurance with respect to the foster child, and reasonable travel to the child's home for visitation as required by 42 U.S.C. § 675(4)(A)."  [ER-496] Plaintiffs further allege that the rates now in effect "do not cover" the items set forth in section 675(4)(A), and "[t]hus these rates violate the Child Welfare Act."  [ER-496]

Plaintiffs also challenge the state statute that provides that "the schedule of basic rates . . . shall be adjusted to by the percentage change in the California Necessities Index . . . subject to the availability of funds," claiming that "on its face [it] does not ensure the ability of the basic rate to cover the cost of or the

3

cost of providing [the items set forth in section 675(4)(A)] as required by 42 U.S.C. § 675(4)(A)." [ER-496]

Plaintiffs request a declaration that "Defendants . . . violated, and continue to violate, and/or will violate the Child Welfare Act by failing to pay amounts sufficient to cover the costs of (and the costs of providing) food, clothing, shelter, daily supervision, school supplies, a child's personal incidentals, liability insurance with respect to a child and reasonable travel to the child's home for visitation that are incurred by licensed foster parents in accordance with federal and state laws and regulations . . . ." [ER-502.] Plaintiffs also seek to have defendants enjoined from continuing to use the basic foster care rates to establish foster care maintenance payments for foster family homes and to "prepare and implement a payment system that complies with the Child Welfare Act by paying licensed foster parents the costs [listed in section 675(4)(A)]." [ER-502]

### B. Defendants' Motion To Dismiss And District Court's Decision.

In November 2007, defendants filed a motion to dismiss plaintiffs' action on the grounds that plaintiffs had failed to state a cause of action under the Child Welfare Act that was enforceable under 42 U.S.C. section 1983. [ER-478] Specifically, defendants contended that plaintiffs had not, and could not,

establish that Congress intended to unambiguously confer on plaintiffs a right to enforce the cited provisions of the Child Welfare Act as required under the U.S. Supreme Court's decision in *Gonzaga University v. Doe*, 536 U.S. 273, 283 (2002).

The District Court denied the motion to dismiss, finding that "at least 42 U.S.C. section 672 may be enforced via Section 1983," citing *California Alliance of Child and Family Services v. Allen*, 459 F. Supp.2d 919 (N.D. Cal. 2006) (Patel, J.) (ER-33)  The District Court also relied on this Court's decision in *Price v. City of Stockton*, 390 F.3d 1105 (9th Cir. 2004):  "In our case, we have an analogous command in 42 U.S.C. 672.  It insists that qualifying states "*shall* make foster care maintenance payments . . . with respect to a child" defined in the following subprovisions."  (ER-34)  The court analogized the language from section 672 to that at issue in *Price* which it contended held that the language ""[e]ach grantee shall provide for reasonable benefits . . .' created individual entitlements."  *Id*.  However, the court also found that "[e]xactly what 'payments to cover the cost' means will be decided later.  For now, it is enough to recognize that this action may not be summarily dismissed."  *Id*.  [ER-35.]  As discussed below, the District Court did not engage in the detailed analysis of the text and structure of the Child Welfare Act

5

provisions required under *Gonzaga,* and thus erred when it denied defendants'
motion to dismiss.

## STATEMENT OF FACTS

The operative factual allegations of the complaint are set forth above,
under the Statement of the Case subsection on Nature of the Case. However,
the issue before this Court is a purely legal one – that is, whether the District
Court erred as a matter of law in denying defendants' motion to dismiss.

## SUMMARY OF ARGUMENT

Defendants submit that the District Court erred in denying appellants'
motion to dismiss. The Child Welfare Act does not contain the requisite rights-
creating language for its provisions to be privately enforceable under section
1983. Instead, as is plain from the enforcement provisions of the Act, the
Secretary of the United States Department of Health and Human Services is
charged with ensuring that states comply with their state plans for the
administration of the Child Welfare Act and its implementing regulations.
There is nothing in those provisions that supports the District Court's decision
that plaintiffs have a right to enforce the Act's provisions regarding the foster
care maintenance payments program, and the District Court did not engage in

the detailed analysis of the text and structure of the Child Welfare Act's

provisions required under the law that would have made this conclusion clear.

## STANDARD OF REVIEW

A District Court's decision to grant or deny a motion to dismiss pursuant

to Federal Rule of Civil Procedure 12(b)(6) is reviewed *de novo*. *Fireman's*

*Fund Ins. Co. v. City of Lodi, California*, 302 F.3d 928, 939 (9th Cir. 2002).

Questions of statutory interpretation are also reviewed *de novo*. *Sylvas v.*

*E\*Trade Mortg. Corp.*, 514 F.3d 1001, 1004 (9th Cir. 2008).

## ARGUMENT

### I. THE DISTRICT COURT ERRED WHEN IT HELD THAT PLAINTIFFS HAVE A PRIVATE RIGHT OF ACTION UNDER PROVISIONS OF THE CHILD WELFARE ACT

#### A. A Plaintiff Cannot Maintain An Action To Enforce A Federal Statue Under Section 1983 Where Congress's Intent To Confer An Individual Right Is Not Clear And Unambiguous.

In order to maintain an action under 42 U.S.C. section 1983, a plaintiff

must establish that Congress unambiguously intended to confer a right of

enforcement of the particular statutory provision at issue. *Gonzaga University*

*v. Doe*, 536 U.S. 273 (2002). In *Gonzaga*, the Supreme Court clarified the

principles to be applied in determining whether a federal statute enacted pursuant to Congress's spending power confers individual rights enforceable under 42 U.S.C. section 1983. The Court began by confirming that private enforcement of Spending Clause statutes is the rare exception. "'In legislation enacted pursuant to the spending power, the typical remedy for state noncompliance with federally imposed conditions is not a private cause of action for noncompliance but rather action by the Federal Government to terminate funds to the State.'" *Gonzaga*, 536 U.S. at 280, quoting *Pennhurst State School and Hospital v. Halderman*, 451 U.S. 1, 28 (1981). Therefore, "unless Congress 'speaks with a clear voice' and manifests an 'unambiguous' intent to confer individual rights, federal funding provisions provide no basis for private enforcement by § 1983. (Citation omitted.)." *Id.*

In *Gonzaga*, the Court next addressed the "confusion" which had led some courts to misinterpret its prior decisions, including *Blessing v. Freestone*, 520 U.S. 329 (1997), as endorsing a less stringent standard. In *Blessing*, the Court had formulated a three-factor test to evaluate whether Congress had conferred an enforceable right: (1) Congress must have intended that the statutory provision in question to benefit the plaintiff; (2) the right must not be so "vague and amorphous" as to be "beyond the competence of the judiciary to

enforce;" and (3) the statute "must be couched in mandatory, rather than precatory terms." 520 U.S. at 340-41. While not abandoning the test, the *Gonzaga* Court dispelled any suggestion that the first *Blessing* factor stood for the proposition that Congressional intent to permit enforcement under section 1983 will be found "so long as the plaintiff falls within the general zone of interest that the statute is intended to protect." *Id.* at 283. That the statute "benefits" the plaintiff is insufficient – the provision must unambiguously create a right:

> We now reject the notion that our cases permit anything short of an unambiguously conferred right to support a cause of action brought under § 1983. Section 1983 provides a remedy only for the deprivation of "rights, privileges, or immunities secured by the Constitution and laws" of the United States. Accordingly, it is *rights*, not the broader or vaguer "benefits" or "interests" that may be enforced under the authority of that section.

*Id.* (Emphasis in original.) Moreover, because only *rights* may be enforced, the Court's implied right of action cases "should guide the determination of whether a statute confers rights enforceable under § 1983." *Id.*

///

9

As *Gonzaga* explains, under the private right of action cases, the "text and structure" of the statute must demonstrate that Congress unambiguously intended to grant individual rights. 536 U.S. at 286. Critical to this inquiry is whether the statutory provision uses "rights-creating" language. 536 U.S. at 287; *Alexander v. Sandoval*, 532 U.S. 275, 288-289 (2001). Such language must clearly impart an "individual entitlement," and have an "unmistakable focus on the benefitted class." *Id.*; *Cannon v. University of Chicago*, 441 U.S. 677, 692, n. 13 (1979) (text of statute must be "phrased in terms of the person benefitted.") "Statutes that focus on the person regulated rather than the individuals protected create no implication of an intent to confer rights on a particular class of person." *Gonzaga*, 536 U.S. at 287, quoting *Alexander v. Sandoval*, 532 U.S. at 289 (internal quotes and citation omitted). "If [the statute] provide[s] some indication that Congress may have intended to create individual rights, and some indication it may not have, that means Congress has not spoken with the requisite 'clear voice.' Ambiguity precludes enforceable rights." *31 Foster Children v. Bush*, 329 F. 3d 1255, 1270 (11th Cir. 2003). The *Gonzaga* Court invoked as exemplars of "rights-creating" language Title VI of the Civil Rights Act of 1964 (42 U.S.C. § 2000d) and Title IX of the Education Amendments of 1972 (20 U.S.C. § 1681(a)). Each of those statutes

provides: "No person in the United States shall . . . be subject to discrimination." According to *Gonzaga*, this language creates individual rights because it is phrased "with an *unmistakable focus* on the benefitted class." 536 U.S. at 284 (quoting *Cannon*, 441 U.S. at 691) (emphasis in original).

Additional closely related principles relevant to determining whether the text and structure of a statutory provision manifest a congressional intent to confer an enforceable right include: (1) statutes that have an "aggregate" focus rather than a focus upon whether the needs of any particular person has been satisfied do not give rise to individual rights; (2) statutes that speak only in terms of institutional policy and practice do not evince an intent to create private rights of enforcement; (3) a statutory provision that references the individual only in the context of describing the type of policy or practice that will trigger a funding prohibition, does not reflect a congressional intent to create a private right of action; and (4) a provision that allows a state entity to avoid a loss of federal funds through substantial compliance reflects a congressional intent to confer group rather than individual rights. *Gonzaga*, 536 U.S. at 288. Application of all these principles demonstrates that the provisions of the Child Welfare Act at issue in this action do not

unambiguously confer rights on foster parents or organizations that represent them.

Only twice has the Supreme Court found that Spending Clause legislation created privately enforceable under section 1983. See *Wright* v. *Roanoke Redevelopment and Housing Authority,* 479 U.S. 418, 426, 432 (1987) (a rent-ceiling provision unambiguously conferred "a  mandatory [benefit] focusing on the individual family and its income"); and *Wilder* v. *Virginia Hosp. Ass'n,* 496 U.S. 498, 522-523 (1990) (provision required States to pay an "objective" monetary entitlement to individual health care providers).  The Supreme Court's subsequent decisions, however, have rejected attempts to infer enforceable rights from Spending Clause provisions whose language did not unambiguously confer such a right upon the Act's beneficiaries.  See, *e.g., Suter* v. *Artist M.,* 503 U.S. 347, 363 (1992) (Adoption Assistance and Child Welfare Act requirement that State have a "plan" to make "reasonable efforts" to keep children out of foster care not actionable); *Blessing* v. *Freestone,* 520 U.S. 329, 340, 343 (1997) (Tile IV-D requirement that State "substantially comply" with requirements designed to ensure timely payment of child support not actionable).

**B.     The Provisions of The Child Welfare Act At Issue Here
Do Not Contain Rights-Creating Language.**

The purpose of the Child Welfare Act [42 §§ 670 *et seq.*] is to enable

"each State to provide, in appropriate cases, foster care and transitional

independent living programs for children who otherwise would have been

eligible for assistance under the State's [approved] plan . . . ."  Under the Act,

the federal government appropriates "sums as may be necessary to carry out the

provisions of this [Act].  The sums made available under this section shall be

used for making payments to States which have submitted, and had approved by

the Secretary, State plans under [the Act]."  42 U.S. C. section 670.  In order for

a State to receive these funds – referred to as federal financial participation

(FFP) – it must submit for approval to the Secretary of the US Department of

Health and Human Services  (HHS) a plan for foster care and adoption

assistance.  42 U.S.C. section 671(a).  That statute also requires the Secretary of

HHS to promulgate regulations for use in reviewing state programs to

determine whether the programs are in "substantial conformity" with the

requirements of the Child Welfare Act, its regulations, and a state's approved

State Plan.  42 sections 1320a-2a(a)(3).  If the Secretary determines that a state

is not in "substantial conformity," there are various actions that the Secretary

must take, including withholding some or all of the FFP that a state would be entitled to for providing benefits under the Act. *Id*.

Section 671(a)(1) provides in pertinent part: "In order for a State to be eligible for payments under [the Act], it shall have a plan approved by the Secretary which . . . provides for foster care maintenance payments in accordance with section [672] and for adoption assistance in accordance with section [673]." This is just one of dozens of requirements for a State Plan. 42 U.S.C. section 671. Section 672 relates to the "foster care maintenance payments program." Specifically, section 672(a)(1) outlines the limitations for participation in the program:

> Each State with a plan approved under [the Act] shall make foster care maintenance payments on behalf of each child who has been removed from the home of a relative . . . into foster care if – (A) the removal and foster care placement met, and the placement continues to meet, the requirements of paragraph (2); and (B) the child, while in the home, would have met the AFDC eligibility requirement of paragraph (3).

"Foster care maintenance payments" is defined as:

> . . . payments to cover the cost of (and the cost of providing) food, clothing, shelter, daily supervision, school supplies, a child's personal incidentals, liability insurance with respect to a child, reasonable travel to the child's home for visitation, and reasonable travel for the child to remain in the school in which the child is enrolled at the time of placement. In the case of

14

> institutional care, such term shall include the
> reasonable costs of administration and operation of
> such institution as are necessarily required to provide
> the items described in the preceding sentence.

42 U.S.C. section 675(4)(A).

There are no regulations under the Act that indicate how such costs are to be calculated or what "cover the cost of" means. The only regulation that applies to foster care maintenance payments is entitled "Foster care maintenance payments program implementation requirements." (45 C.F.R. § 1356.21) Section 1356.21(a) sets forth the "[s]tatutory and regulatory requirements of the Federal foster care program":

> To implement the foster care maintenance payments
> program provisions of title IV-E State plan and to be
> eligible to receive Federal financial participation
> (FFP) for foster care maintenance payments under
> [the Act], a State must meet the requirements of this
> section, 45 C.F.R. § 1356.22, 45 C.F.R. § 1356.30,
> and sections [672, 675(1), 675(4), 675(5) and 675(6)]
> of the Act.

Section 1356.21(b) requires a State to "make reasonable efforts to maintain the family unit and prevent the unnecessary removal of a child from his/her home, as long as the child's safety is assured . . . ." That provision also provides: "In order to satisfy the 'reasonable efforts' requirements of section [671(a)(15)] (as implemented through section [672(a)(1)] of the Act), the State

15

must meet the requirements of paragraphs (b) and (d) of this section."   A judicial determination must be made that "reasonable efforts were made, or not required,  to prevent the removal . . . no later than 60 days from the date the child is removed from the home . . . ."  45 C.F.R. § 1356.21(b)(1)(i).  If such a judicial determination is not made within 60 days of removal, "the child is not eligible under the title IV-E foster care maintenance payments program for the duration of that stay in foster care."  45 C.F.R. section 1356.21(b)(1)(ii).

Nothing in the "text and structure" of the Child Welfare Act demonstrates that Congress unambiguously intended to grant individual providers the right to enforce its provisions.  None of the provisions of the Act contain any "rights creating language," nor do they have an "unmistakable focus" on providers.  In fact, the focus of the applicable statutory and regulatory provisions is on the State and what it must do in order to recover FFP for the foster care maintenance payments that it makes.  There is nothing in the language that even mentions foster care providers, let alone that demonstrates that these provisions are written for their benefit.  Furthermore, a state need only be in "substantial conformity" with these provisions – another indication under *Gonzaga* that Congress did not intend to confer individual rights on providers to enforce these provisions of the Child Welfare Act.  536 U.S. at 288.  In fact, there is nothing

in any of these provisions that evinces a Congressional intent that providers have enforceable rights here.  Quite the opposite.  As with most Spending Clause legislation, Congress intended  the Secretary of HHS to enforce the provisions of the Child Welfare Act and that they not be privately enforceable by providers or anyone else.

Therefore, had the District Court done the requisite analysis under *Gonzaga* it could only have determined that *none* of the provisions cited by plaintiffs contain any rights-creating language, there is nothing in the "text and structure" of the Act that demonstrates that Congress intended providers to privately enforce these provisions, and there is nothing in the statutory or regulatory provisions that requires states to pay the actual costs listed in section 675(4)(A) or directs how the state is to calculate those costs.  In fact, section 1320a-2a specifically states that the Secretary of HHS is to determine if a state is in "substantial conformity" with the provisions of the Child Welfare Act, which provision in and of itself shows that Congress did not intend that providers have enforcement rights or that providers are entitled to reimbursement for 100% of their costs as plaintiffs contend.

///

The District Court's reliance on this Court's decision in *Price* is overly simplistic. In that case, this Court found that certain provisions of the Housing and Community Development Act are enforceable under section 1983 and others are not. Provisions that are focused on the grant recipient city do not contain rights-creating language. "The obligations of section 104(d)(2)(A)(i) and (ii) serve to ensure that the overall supply of affordable housing with the affected community remains constant. Section 104(d)(2)(A)(i) mandates one-for-one replacement of 'occupied *and vacant occupiable* low and moderate income dwelling units' – that is, units that could have been, but were not, occupied by anyone. [Citations omitted.] The replacement units 'shall be designed to remain affordable' to persons of low and moderate income for 10 years." (Citation omitted.) *Price*, 390 F.3d at 1113.

However, other provisions of the Housing and Community Development Act which are specifically focused on displaced residents are enforceable by those individuals. Specifically, this Court found: "Section 104(d)(2)(A)(iii) precisely enumerates the monetary benefits to which displaced persons of low and moderate income are entitled, 'including reimbursement for actual and reasonable moving expenses, security deposits, credit checks, and other moving-related expenses , including any interim living costs. [Citations

18

omitted.]  Grantees also must provide either compensation sufficient to ensure that displaced families 'shall not bear, after relocation, a ratio of shelter costs to income that exceeds 30 percent,' [citation] or an equivalent payment designed to permit the household to 'secure participation in a housing cooperative or mutual housing association.'"  *Id*. at 1112 (citations omitted).

Here, section 672 does not enumerate any monetary benefits to which either providers or foster children are entitled.  This provision is focused on the state and what it must do in order to participate in the foster care maintenance payments program:  make reasonable efforts to keep children in their homes, and  ensure that a judicial determination that this is not possible has been made within a certain time period.  If a state does not comply with these requirements, it may not recover FFP for the foster care maintenance payments that it may pay out.   Therefore, it is not analogous to the provisions the *Price* court found were enforceable which required the city to pay certain sums to displaced residents.

Indeed, when courts have done the requisite analysis set forth in *Gonzaga* and *Blessing*, they have determined that provisions of the Child Welfare Act are not enforceable under section 1983, that there is no rights-creating language in any of the provisions, and that they are too "vague and amorphous" to be judicially enforced.  For example, when the 11th Circuit considered the claims

of a group of foster children that Florida was not properly implementing a "case review" system, the court determined that the children did *not* have an enforceable right under the Act. See *31 Foster Children v. Bush*, 329 F.3d 1255, 1274 (11th Cir. 2003). In that case, plaintiffs brought suit under two provisions of section 675(5) regarding the case review system to be maintained by a state under the Act. The Court rejected plaintiffs' contention that provisions regarding the case review system gave them an enforceable right under the statute. "Because §§ 675(D) and (E) are definitional in nature, they alone cannot and do not supply a basis for conferring rights enforceable under § 1983. See *Gonzaga*, 536 U.S. at 280, 122 S. Ct. at 2273; *see also Charlie H. v. Whitman*, 83 F. Supp.2d 476, 490 (D.N.J. 2000) (§ 675(5) (standing alone, does not confer a right enforceable under § 1983); *B.H. v. Johnson*, 715 F. Supp. 1387, 1401 (N.D. Ill. 1989) ('It would be strange for Congress to create enforceable rights in the definitional section of a statute.') 329 F.3d at 1271.

> Other than the definition, the only provision in Part E
> of Title IV that uses the term 'case review system' is
> 42 U.S.C. § 671(a)(16). That section conditions
> receipt of federal funds on the existence of a state plan
> that, among other things, provides for "a case review
> system which meets the requirements described in
> section 675(5)(B) . . . with respect to each such child.'
> Section 671(a)(16) does not go beyond that and
> explicitly require that a plan meet the requirements
> described in §§ 675(5)(D) and (E).

329 F.3d at 1271.  The Court concluded that sections 675(5)(D) and (E) "do not have the kind of focused-on-the-individual, rights-creating language required by *Gonzaga*.  Instead, the language of those provisions gives them an aggregate or system wide focus instead of one that indicates concern with whether the needs of any particular child are met."  329 F.3d at 1272, citing *Gonzaga*, 536 U.S. at 288.  Thus, the Court held that neither of the definitional provisions at issue were enforceable under section 1983.

Similarly, in a case brought by foster children challenging, in part, the amount of foster care payments made on their behalf under the very provisions at issue here, the court held the provisions were not privately enforceable under section 1983.  *Foreman v. Heineman*, 240 F.R.D. 456, 540 (D. Neb. 2006).  "With respect to 'foster care maintenance payments," neither § 672 nor the definition of that term in § 675(4) provide any language for discerning how rates should be set for paying foster care providers the 'cost' of caring for a foster child, and in the case of institutional care, 'the reasonable costs of administration and operation of such institution as are necessarily required' to care for a foster child.' 42 U.S.C. § 675(4)(A)."  The court noted that plaintiffs had not cited to any regulations governing the calculation of foster care maintenance payments and concluded that "plaintiffs' asserted right to foster

care maintenance payments is too 'vague and amorphous' to support a federal right enforceable under § 1983. *Id.* See also *Olivia Y. v. Barbour*, 351 F. Supp.2d 543, 562 (S.D. Miss. 2004) (plaintiffs have no enforceable rights under section 675(A) [and other provisions]), citing *Charlie H.*, 83 F. Supp.2d at 490.

Only when courts have failed to "'examine whether particular statutory provisions create specific enforceable rights, rather than considering the statute and purported rights on a more general level,'" have they concluded that provisions of the Child Welfare Act are enforceable under section 1983. *Price*, 390 F.3d at 1110 (citations omitted). For example, in *California Alliance of Child and Family Services*, 459 F. Supp.2d 919, 923 (N.D. Cal. 2006), the court relied exclusively on the definition of "foster care maintenance payments" in section 675(4)(A) to support its finding that the [Child Welfare Act] provides objective criteria for foster care maintenance payments." The court concluded: "The list of costs presented in section 675(4)(A) is of the same type of specific, objective monetary entitlement as that in *Price*." *Id.* However, the court in *California Alliance* did not look at the text and structure of the Act, acknowledge that the Secretary is charged with ensuring that a state substantially conforms with its provisions, or examine the Act's implementing regulations. Rather, the court appears to have engaged in a superficial analysis

22

and concluded because section 675(4)(A) concerns "payments" that it automatically confers a specific monetary entitlement.[1]

The *California Alliance* court also erred in finding that section 675(4)(A) "contains an explicit and detailed provision for determining payments to foster care providers" such that the provision is not too "vague and amorphous" to be judicially enforceable. Again, the court ignored the text and structure of the statute. This is a definitional provision that is not enforceable. See *31 Foster Children*, 329 F.3d at 1271 (definitional provisions "alone cannot and do not supply a basis for conferring rights enforceable under § 1983"). There is nothing in the regulations that indicates how these costs are to be calculated, whether individual providers are entitled to recover their specific costs or whether the state is required to establish some sort of standard for these costs. As set forth above, the whole focus of the foster care maintenance payments

---

1. The District Court's reliance on *ASW v. Oregon*, 424 F.3d 970, 976 (9th Cir. 2005) is inapposite. In that case this Court found that a provision that required that the amount of adoption assistance payments be determined "through agreement between the adoptive parents and the State . . . which take[s] into consideration the circumstances of the adopting parents and the needs of the child being adopted" was enforceable by adoptive parents. (42 U.S.C. § 673(a)(3)). The court also determined that a provision that provides for a fair hearing regarding claims for adoptive assistance. These are very specific provisions that contain rights-creating language that is unambiguously focused on individual adoptive parents unlike sections 672 and 675 at issue here.

program is on the state and what it must do in order to be recover federal reimbursement for its payments.

This Court should also reject the *California Alliance* court's reliance on *Missouri Child Care Ass'n v. Cross*, 294 F.3d 1034 (8th Cir. 2002) to support its finding that sections 672 and 675(4)(A) are not too vague and amorphous to be judicially enforceable. As the court in *Foreman* found: "With respect to 'foster care maintenance payments,' neither § 672 nor the definition of that term in § 675(4)(A) provide any language for discerning how rates should be set for paying foster care providers the 'cost' of caring for a foster child, and in the case of institutional care, 'the reasonable costs of administration and operation of such institution as are necessarily required' to care for a foster child.'" *Foreman*, 240 F.R.D. at 279-280. The court noted that plaintiffs had not cited to any governing the calculations of foster care maintenance payments – in fact, there are none. The court, therefore, disagreed with *Missouri Child Care* and concluded that the "plaintiffs' asserted right to foster care maintenance payments is too 'vague and amorphous' to support a federal right enforceable under § 1983." *Id.* at 280. *Foreman* is clearly the better and more carefully reasoned case. The court examined the text and structure of the provisions governing the foster care maintenance payments program and concluded that

the provisions do not create enforceable rights and that they are not judicially enforceable.

Here, the District Court did not conduct the careful analysis required by the Supreme Court as set forth in *Gonzaga* and *Blessing*.  Had it done so, it would have concluded that plaintiffs do not have a private right to enforce the Child Welfare Act and it would not have erred in denying appellants' motion to dismiss.

## CONCLUSION

The District Court erred in denying appellants' motion to dismiss.  The Child Welfare Act does not contain the requisite rights-creating language for its provisions to be privately enforceable under section 1983.  Instead, as is plain from the enforcement provisions of the Act, the Secretary is charged with ensuring that states comply with their state plans, the Act and its implementing regulations.  There is nothing in these provisions that supports the District Court's decision that plaintiffs have a right to enforce its provisions regarding the foster care maintenance payments program.  Therefore, this Court should reverse the District Court's decision denying appellants' motion to dismiss.

Dated:  April 22, 2009.

Respectfully submitted,

EDMUND G. BROWN JR.
Attorney General of the State of California

SUSAN M. CARSON
Supervising Deputy Attorney General

GEORGE PRINCE
Deputy Attorney General


/s/  Susan M. Carson


SUSAN M. CARSON
Supervising Deputy Attorney General

Attorneys for Defendants and Appellants

**Certificate of Compliance Pursuant to
Fed. R. App. P. 32(a)(7)(C) and Circuit Rule 32-1
for Case Numbers:  09-15025 and <u>09-15051</u>**

I certify that:

1.      Pursuant to Fed. R. App. P. 32(a)(7)(C) and Ninth Circuit Rule 32-1, the attached opening brief is:

Proportionately spaced, has a typeface using Corel WordPerfect, version 8.0, in 14 point Times New Roman, and contains 5,416 words.

## CERTIFICATE OF SERVICE
### When All Case Participants are Registered for the
### Appellate CM/ECF System

U.S. Court of Appeals Docket Number(s): | 09-15025 and 09-15051 |

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on (date) __Apr 22, 2009_____ .

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Signature | /s/ C. Deuel |

**************************************************************************

## CERTIFICATE OF SERVICE
### When Not All Case Participants are Registered for the
### Appellate CM/ECF System

U.S. Court of Appeals Docket Number(s): | |

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on (date) _____ .

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

I further certify that some of the participants in the case are not registered CM/ECF users. I have mailed the foregoing document by First-Class Mail, postage prepaid, or have dispatched it to a third party commercial carrier for delivery within 3 calendar days to the following non-CM/ECF participants:

Signature | |