09-15025

## IN THE UNITED STATES COURT OF APPEALS

### FOR THE NINTH CIRCUIT

**JOHN A. WAGNER, Director of the California Department of Social Services, in his official capacity; GREG ROSE, Deputy Director of the Childern and Family Services Division of the California Department of Social Services, in his official capacity,**

          Defendants and Appellants,

**v.**

**CALIFORNIA STATE FOSTER PARENT ASSOCIATION, CALIFORNIA STATE CARE PROVIDERS ASSOCIATION, and LEGAL ADVOCATES FOR PERMANENT PARENTING,**

          Plaintiffs and Appellees.

On Appeal From the United States District Court
for the District of California

No. C 07-5086 WHA
The Honorable William Alsup, Judge

### APPELLANTS' REPLY BRIEF

EDMUND G. BROWN JR.
Attorney General of California
DOUGLAS M. PRESS
Senior Assistant Attorney General
SUSAN M. CARSON, State Bar No. 135875
Supervising Deputy Attorney General
GEORGE D. PRINCE, State Bar No. 133877
Deputy Attorney General
 455 Golden Gate Avenue, Suite 11000
 San Francisco, CA 94102-7004
 Telephone: (415) 703-5580
 Facsimile: (415) 703-5480
 Email: susan.carson@doj.ca.gov
*Attorneys for Appellants*

# TABLE OF CONTENTS

**Page**

Introduction.................................................................................. 1

Argument .................................................................................... 2

    I.    Plaintiffs do not have a right to enforce the child welfare act's provisions regarding foster care maintenance payments.................................................................................. 2

        A.    Section 672(a)(1)") does not create a monetary entitlement for foster parents. ........................................ 2

        B.    Plaintiffs' attempts to distinguish cases that demonstrate that section 672 does not create individual rights fail..................................................... 10

        C.    The absence of an administrative remedy for foster parents is not determinative of whether sections 672 and 675 create individual rights............................. 13

        D.    The state's compliance with the child welfare act is subject to a "substantial conformity" standard contrary to plaintiffs' assertion ..................................... 14

Conclusion ................................................................................. 15

Statement of Related Cases......................................................... 17

i

# TABLE OF AUTHORITIES

**Page**

## CASES

*31 Foster Children v. Bush*,
329 F.3d 1255 (11th Cir. 2003) ........................................ 3, 10, 13, 14

*Alexander v. Sandoval*,
532 U.S. 275 (2001)........................................................................... 3

*ASW v. Oregon*,
424 F.3d 970 (9th Cir. 2005) .................................................. 2, 4, 6, 7

*Cannon v. University of Chicago*,
441 U.S. 477 (1979)........................................................................... 3

*Missouri Child Care Ass'n v. Martin*,
4241 F. Supp.2d 1032 (W.D. Mo. 2003).......................................... 11

*Price v. City of Stockton*,
390 F.3d 1105 (9th Cir. 2004) ................................................ 2, 4, 6, 7

*Wilder v. Virginia Hospital Ass'n*,
496 U.S. 498 (1990).................................................................. passim

*Withrow v. Concannon*,
942 F.2d 1385 (9th Cir. 1991) ...................................................... 14, 15

*Wright v. Roanoke Redevelopment & Housing Authority*,
479 U.S. 418 (1987).............................................................. 2, 4, 5, 7

## STATUTES

42 U.S.C. § 672....................................................................... passim

42 U.S.C. § 672(a)(3)................................................................... 8

42 U.S.C. § 672(b) ................................................................... 8, 9

ii

# TABLE OF AUTHORITIES
### (continued)

**Page**

42 U.S. C. § 673(a)(3)...........................................................6, 8

42 U.S.C. § 675(4) ...............................................................8

42 U.S.C. § 675(4)(A) .................................................... passim

42 U.S. C. §§ 1320a-2a...........................................................13

42 U.S.C. § 1983 ("section 1983") ................................... passim

42 U.S.C. § 5304(d)(2)(A)(iii) ...............................................6

42 U.S.C. § 5304(k) .............................................................6

Welf. & Inst. Code, §§ 11460, 11461 .....................................11

**CONSTITUTIONAL PROVISIONS**

14th Amendment.......................................................................15

**OTHER AUTHORITIES**

45 C.F.R. §§ 356.21 .............................................................9

## INTRODUCTION

The district court erred in determining that 42 U.S.C. § 672 ("section 672") of the Child Welfare Act ("the Act") may be enforced pursuant to 42 U.S.C. § 1983 ("section 1983"). The court's constrained and narrow reading of section 672 is contrary to the United States Supreme Court's instructions under *Gonzaga,* which require that the court examine the "text and structure" to determine if the statute contains "rights-creating" language such that it is "clear and unambiguous" that Congress intended to create individuals rights. Essentially, the District Court pulled certain language from section 672, summarily determined that it was similar to a provision in other Spending Clause legislation, and found it be analogous. The Court did not consider the full text of section 672, the applicable regulations, or the fact that section 675(4)(A) is merely the definitional section for "foster care maintenance payments." Had it done so, it could only have determined that the text and structure of sections 672 and 42 U.S.C. § 675(4)(A) ("section 675(4)(A)") do not unambiguously confer individual rights on foster parents under section 1983. Close examination of the text of these provisions and the applicable regulations shows that the statute's focus is on the *state* and what *it* must do in order to recover federal funding for the foster care program. Quite simply, there is not the requisite "rights-creating" language

1

that evidences Congress's intent to create individual rights. There is no "unmistakeable focus" on foster parents. In other words, there are no indicia of "rights-creating" language from which to infer that Congress intended to confer individual rights on foster parents to challenge the payments they receive under the Act. This court should reverse the trial court's denial of appellant's motion to dismiss.

## ARGUMENT

I. **PLAINTIFFS DO NOT HAVE A RIGHT TO ENFORCE THE CHILD WELFARE ACT'S PROVISIONS REGARDING FOSTER CARE MAINTENANCE PAYMENTS**

A. **Section 672(a)(1)") Does Not Create a Monetary Entitlement for Foster Parents.**

Plaintiffs contend that it is clear and unambiguous that Congress intended to confer on foster parents the right to challenge the payments they receive under section 672. Answering Brief at 9. Essentially, plaintiffs contend that the language of section 672, coupled with the definition of "foster care maintenance payments" in section 675(4)(A), constitutes an "objective monetary entitlement" such as those at issue in *Wilder v. Virginia Hospital Ass'n*, 496 U.S. 498 (1990); *Wright v. Roanoke Redevelopment & Housing Authority*, 479 U.S. 418 (1987); *Price v. City of Stockton*, 390 F.3d 1105 (9th Cir. 2004); and *ASW v. Oregon*, 424 F.3d 970 (9th Cir. 2005).

2

Answering Brief at 9-10, 11-12.  In other words, according to plaintiffs, if the provision at issue concerns payments, it must be enforceable under section 1983.  This also appears to have been the extent of the district court's analysis with regard to section 672.

However, under *Gonzaga*, this one-step analysis is not sufficient. The "text and structure" of the statute must demonstrate that Congress unambiguously intended to grant individual rights.  536 U.S. at 286.  Critical to this inquiry is whether the statutory provision uses "rights-creating language."  *Id*; *Alexander v. Sandoval*, 532 U.S. 275, 288-289 (2001).  Such language must clearly impart an "individual entitlement," and have an "unmistakeable focus on the benefitted class."  *Id*.; *Cannon v. University of Chicago*, 441 U.S. 477, 677, n. 13 (1979)  If there is any question whether Congress intended to create individual rights, "that means that Congress has not spoken with the requisite 'clear voice,'" and the provision does not create a right enforceable under section 1983.  *31 Foster Children v. Bush*, 329 F.3d 1255, 1270 (11th Cir. 2003) (if the text and structure of the statute "provide some indication that Congress may have intended to create individual rights, and some indication it may not have, that means Congress has not spoken with the requisite 'clear voice.'").

3

*Gonzaga* provides additional guidance as to when a statutory provision does *not* create an individual right: (1) the focus is on the person regulated and not on whether the needs of any particular person has been met; (2) the statue speaks in terms of institutional policy and practice; (3) the statute references the individual only in the context of describing the type of policy of practice that will trigger a funding prohibition; and (4) the provision allows a state entity to avoid a loss of federal funds through substantial compliance. *Gonzaga*, 536 U.S. at 288. A close examination of the "text and structure" language of sections 672(a)(1) and 675(4)(A) demonstrates that these provisions meet these conditions and therefore, are not enforceable under section 1983, contrary to the District Court's finding.

In support of their contention that sections 672(a)(1) and 675(4)(A) confer an "objective monetary entitlement" on foster parents, plaintiffs rely on the two Spending Clause cases where at the Supreme Court found that Congress intended to create individual rights[1] (*Wilder* and *Wright*) and two such cases from this court (*Price* and *ASW*). However, in each of these

---

[1] In *Gonzaga*, the Supreme Court explained why it had found the provisions at issue in *Wright* and *Wilder* enforceable, characterizing them as "concrete monetary entitlements." 536 U.S. at 289.

4

cases–and unlike in this case–it was clear and unambiguous that Congress intended to create individual rights.

For example, in *Wilder*, the Boren Amendment imposed a "binding obligation on States participating in the Medicaid program to adopt reasonable and adequate rates . . . ." 496 U.S. at 512. The Court examined the implementing regulations and the legislative history of the Boren Amendment in reaching the conclusion that hospitals had a private right of action under section 1983.

Similarly, in *Wright*, the Supreme Court determined that the Brooke Amendment was enforceable under section 1983 because it was clearly focused on low-income residents. It provided: "*A family* shall pay as rent . . . the highest of the following amounts, rounded to the nearest dollar: (1) 30 per centum of the family's adjusted income; (2) 10 per centum of the family's monthly income . . . ." (Emphasis added.) As the Court found: "This was a mandatory limitation focusing on the individual family and its incomes. The intent to benefit tenants is undeniable. Nor is there any question that HUD interim regulations . . . expressly required that a 'reasonable' amount for utilities be include in rent . . . ." 479 U.S. at 430. Again, the focus of the provision at issue is the individual who is asserting a right of action.

5

This was also the case in both *Price* and *ASW*. In *Price*, the statutory provision at issue provided: "[E]ach grantee shall provide for reasonable benefits *to a person involuntarily and permanently displaced . . . .*" 42 U.S.C. § 5304(k) [emphasis added]. In order to determine whether this provision was enforceable under section 1983, this Court looked to other provisions of the Housing and Community Development Act and determined that it was. "Reasonable benefits" in that case were defined as: "reimbursement for actual and reasonable moving expenses, security deposits, credit checks, and other moving-related expenses, including any interim living costs." 42 U.S.C. § 5304(d)(2)(A)(iii). This Court also cited the applicable regulations.[2]

In *ASW*, parents of adopted children with special needs brought suit alleging several violations of the Adoption Assistance and Child Welfare Act, including a challenge to the methodology by which adoptive assistance payments were calculated. Section 673(a)(3) requires that the amount of adoption assistance payments be determined "through agreement between

---

[2] Although regulations alone do not create enforceable rights, regulations "'may be relevant in determining the scope of the right conferred by Congress' and 'therefore may be considered in applying the three-prong *Blessing* test.'" *Price*, 390 F.3d at 1112, citing *Save Our Valley v. Sound Transit*, 335 F.3d 941, 943 (9th Cir. 2003).

the adoptive parents and the State . . . which . . . take[s] into consideration the circumstances of the adopting parents and the needs of the child being adopted." *ASW, supra*, 424 F.3d at 975, citing 42 U.S.C. § 673(a)(3). "Furthermore, the amount of the payment may only be readjusted "with the concurrence of the adopting parents, depending upon changes" in the circumstances of the adopting parents and the needs of the child." *Id*. This Court concluded: "This language evinces a clear intent to create a federal right. The statutory text unambiguously requires the State to engage in an *individualized process* with *each family* that takes into account their *unique requirements* in determining the amount of *their* adoption assistance payments throughout the duration of their participation in the program." *Id*. At 976 (emphasis added).

Unlike the provisions at issue in *Wilder*, *Wright*, *Price* and in *ASW*, section 672 does not focus on individual foster parents, as plaintiffs contend. The language of the provision focuses on the State and what it must do in order to recover federal reimbursement for the foster care maintenance payments it makes. First, the provision relates to the "foster care maintenance payments *program*." 42 U.S.C. § 672, emphasis added. Section 672(a)(1) relates to "eligibility" for states' participation in the program. Although this provision provides that "[e]ach State . . . shall make

7

foster care maintenance payments on behalf of each child who has been removed from the home . . .," it is expressly conditioned on actions required to be taken by the *State*. For example, the removal and placement of the child must meet certain requirements outlined in subdivision (a)(2), and the child, while in the home of a relative prior to foster care placement, must have been eligible to receive AFDC benefits. 42 U.S.C. § 672(a)(3).

Furthermore, section 672(b) provides for "additional qualifications" for participation in the foster care maintenance payments program: "Foster care maintenance payments may be made . . . only on behalf of a child described in subsection (a) who is (1) in the foster family home of an individual, whether the payments therefor are made to such individual or to a public or private child-placement or child-agency . . . , which payments shall be limited so as to include in such payments only those items which are included in the term 'foster care maintenance payments' (as defined in section [42 U.S.C. § 675(4)])."

Thus, unlike section 673(a)(3) of the Adoption Assistance Act, which specifically provides that the payments must be negotiated between the adoptive parent and the state, the focus of section 672 is not on individual foster parents. Indeed, foster care maintenance payments may only be made if the state meets certain requirements. More significantly, foster care

8

maintenance payments are not always paid directly to the foster parent in whose home the child lives. 42 U.S.C. § 672(b). And finally, payments are limited to those items set forth in section 674(4)(A).

Thus, contrary to plaintiffs' position that foster parents are entitled to be reimbursed for the expenses listed in section 675(4)(A), section 672(b) makes clear that this is a limitation on the State as to what it may pay for. Unlike payments made to adoptive parents, the actual expenses of any particular foster parent are not required to be reimbursed under sections 672 and 675(4)(A).[3] The focus of these provisions is clearly on the State's conditions of participation in the program and on the state's actions, and limiting payments to particular items. The district court did not engage in the type of analysis required under *Gonzaga* and, consequently, erroneously found that section 672 created individual rights. [ER-34.] If the district court had followed the dictates of *Gonzaga*, it could only have concluded that, given the text and structure of these provisions, there is not an "unmistakable focus" on foster parents, and that Congress did not intend to create individual rights in foster parents enforceable under section 1983.

---

[3] The applicable regulations–which plaintiffs ignore–further demonstrate that the focus of the foster care maintenance payments program is not the state, not foster parents. See 45 C.F.R. §§ 356.21 subds. (a) and (b).

9

**B.   Plaintiffs' Attempts to Distinguish Cases that Demonstrate that Section 672 Does Not Create Individual Rights Fail.**

Plaintiffs' claim that the fact that it is irrelevant that section 674(4)(A) is definitional is nonsensical.  Answering Brief at 16.  Plaintiffs' assert that foster parents' actual expenses are not being reimbursed.  But, in order to even make this claim, they must cite to section 675(4)(A), which is the only provision that actually lists the items that foster care maintenance payments program may cover.

Moreover, their efforts to distinguish *31 Foster Children* fail.  Just as the *31 Foster Children* court found that there was no requirement that a state plan's case review system must meet the requirements of the definition of "case review system," there is nothing in the text and structure of the Child Welfare Act that "show[s] exactly what foster parents are entitled to recover from states . . .," as plaintiffs claim.  Answering Brief at 17.  As explained above, foster care maintenance payments are contingent on the state complying with various statutory and regulatory provisions: they are not necessarily paid directly to foster parents, and they are limited to the items listed in section 675(4)(A).  In other words, there is no guarantee in the Act

10

that foster parents will be reimbursed at any particular level, that they will be paid directly by the State, or that they will be paid at all.[4]

Plaintiffs' further attempt to distinguish *Foreman*,[5] *Olivia Y.*, and *Charlie H.,* on the ground that those cases were brought by foster children as opposed to providers, should also be rejected. The point here is that there is nothing in the text and structure of sections 672 and 675(4)(A) that evidences Congressional intent for anyone–foster children, foster parents, or foster care institutions–to have the right to bring suit under section 1983. Moreover, the court in *Missouri Child Care Ass'n v. Martin*, 4241 F. Supp.2d 1032 (W.D. Mo. 2003), another case upon which plaintiffs rely, is not dispositive. In that case, where the plaintiff was a trade organization that represented approximately 60 child care agencies in Missouri, the court determined in conclusory fashion that foster care maintenance payments were similar to the monetary entitlement at issue in *Wilder*. However, the court did not examine the text and structure of section 672, but instead relied upon the fact that section 675(4)(A) defines what constitutes "foster care maintenance payments" and concluded that "[t]he [Child Welfare Act], like

---

[4] Foster care parents are paid pursuant to state law. See Welf. & Inst. Code, §§ 11460, 11461.

[5] Plaintiffs' contention that *Foreman* is "unpublished" is obviously without merit. The opinion is published in the Federal Rules Decisions.

the Medicaid statute in *Wilder*, explicitly confers monetary entitlements on the foster care institutional providers and evidences Congress' intent to permit those foster care institutions to enforce their rights in federal court using § 1983." *Id*. At 1041. The court rejected Missouri's argument that section 675(4)(A) was intended to benefit foster children, finding "the reference to costs focuses on the institutions and not the children," and that Congress "would have been aware" that foster care institutions, not foster children, would be in a better position to enforce those rights . . . ." *Id*. The court's sole reliance on section 675(4)(A) does not comport with the requirements set forth in *Gonzaga* and, therefore, should not be followed here.

As the court in *Foreman* concluded: "[N]either § 672 nor . . . § 675(4)(A) provide any language for discerning how rates should be set for paying foster care providers the 'cost' of caring for a foster child," and therefore, "plaintiffs' asserted right to foster care maintenance payments is too 'vague and amorphous' to support a federal right enforceable under § 1983." *Id.* At 1040. The bottom line is that only by ignoring the full text and structure of sections 672 and 675(4)(A) and the applicable regulations can a court conclude that they create individual rights enforceable under section 1983. The courts that have followed the guidance provided in

*Gonzaga* have concluded that there is no "rights-creating" language in these provisions, and have correctly determined that they are not privately enforceable.

### C. The Absence of an Administrative Remedy for Foster Parents is Not Determinative of Whether Sections 672 and 675 Create Individual Rights

Finally, plaintiffs also contend that the lack of an administrative remedy to challenge alleged violations of sections 672 and 675(4)(A) supports the existence of an enforceable right. Answering Brief at 13-14. However, whether an administrative procedure exists is not determinative of whether a provision is privately enforceable. See *31 Foster Children*, 329 F.3d at 1272-73. In that case, the 11th Circuit Court found that the "lack of an enforcement mechanism by which an aggrieved individual can obtain review is but one of the factors" to be considered. *Id* at 1272. However, the court determined that this factor was outweighed by the fact that the pertinent provisions did not have individually focused, rights-creating language that employed a substantial compliance standard. As the court noted, "the Secretary enforces the [Act] by requiring the implementation of corrective action or withholding federal funds if the states fail to comply with an approved plan." See 42 U.S. C. §§ 1320a-2a. The court also cited

13

the regulations that require the Secretary to audit states to determine whether they are in compliance. *31 Foster Children*, 329 F.3d at 1272, citations omitted.

### D. The State's Compliance with the Child Welfare Act Is Subject to a "Substantial Conformity" Standard Contrary to Plaintiffs' Assertion

Plaintiffs' contention that the state's compliance with section 672 is not subject to a "substantial conformity" standard is wholly unsupported. Answering Brief at 21-22. Sections 1320a-2a specifically apply to all state adoption assistance and foster care "programs." There is no exemption for the foster care maintenance payments program. Plaintiffs' reliance on *Withrow v. Concannon*, 942 F.2d 1385, 1387 (9th Cir. 1991), "as closely analogous" to this case, is misplaced. First, the state in that case (Oregon) did not contend that the plaintiffs did not have enforceable right to challenge the provisions at issue. The state merely argued that it had substantially complied with the provisions and that substantial compliance was sufficient. 942 F.2d at 1387. Moreover, the plaintiffs contended that Oregon violated their right to "fair hearings" under the Aid for Dependent Children, Medicaid, and Food Stamps programs, because the state was not providing the hearings within the statutorily requirement time frames. (Plaintiffs also

14

alleged that this was a violation of the due process clause of the 14th
Amendment.)  This Court rejected Oregon's contention that it was only
required to be in "substantial compliance" with the federal requirements.
"The language of the federal regulations is unequivocal and states that a
decision 'shall' or 'must' be made within the specified number of days." *Id*.
At 1387.  This court then remanded to the district court for further
proceedings to determine if Oregon had, in fact, complied with the
applicable regulations.  *Id*. At 1389.

Here, the fact that the programs under the Child Welfare Act,
including the foster care maintenance payments program, are subject to a
"substantial conformity" standard is further evidence that Congress did not
intend to create individual rights in foster parents.  *Gonzaga*, 536 U.S. at
288.  Unlike in *Withrow*, the issue here is not whether California has
substantially complied with the provisions of the Act; the question is
whether foster parents have individual rights to enforce sections 672(a)(1)
and 675(4)(A).  Given the text and structure of the Child Welfare Act, they
do not.

## CONCLUSION

The district court erred when it concluded that the language of section
672 provides that states "*shall* make foster care maintenance payments . . .

15

with respect to a child" creates an individual right enforceable under section 1983. (ER-34.) The court did not engage in the requisite analysis of the text and structure of section 672, and completely ignored the definitional nature of section 675(4)(A). Had the district court followed the dictates of the U.S. Supreme Court in *Gonzaga*, it could not have concluded that Congress intended to create individual rights in foster parents to bring suit under section 1983 to challenge a state's payment rates. Accordingly, this Court should reverse the district court.

Dated: May 22, 2009.            Respectfully submitted,

                                EDMUND G. BROWN JR.
                                Attorney General of California
                                DOUGLAS M. PRESS
                                Senior Assistant Attorney General

                                   */s/ Susan M. Carson*

                                SUSAN M. CARSON
                                Supervising Deputy Attorney General
                                GEORGE D. PRINCE
                                Deputy Attorney General
                                *Attorneys for Defendants*

SF2009403560
40337027.doc

09-15025

IN THE UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**JOHN A. WAGNER, Director of the California Department of Social Services, in his official capacity; GREG ROSE, Deputy Director of the Childern and Family Services Division of the California Department of Social Services, in his official capacity,**

Defendants and Appellants,

**v.**

**CALIFORNIA STATE FOSTER PARENT ASSOCIATION, CALIFORNIA STATE CARE PROVIDERS ASSOCIATION, and LEGAL ADVOCATES FOR PERMANENT PARENTING,**

Plaintiffs and Appellees.

**STATEMENT OF RELATED CASES**

To the best of our knowledge, there are no related cases.

17

Dated:  May 22, 2009.           Respectfully Submitted,

EDMUND G. BROWN JR.
Attorney General of California
DOUGLAS M. PRESS
Senior Assistant Attorney General

*/s/ Susan M. Carson*

SUSAN M. CARSON
Supervising Deputy Attorney General
GEORGE D. PRINCE
Deputy Attorney General
*Attorneys for Defendants*

18

## Certificate of Compliance Pursuant To
### Fed. R. App.P. 32(A)(7)(C) and Circuit Rule 32-1
### for Case Number 09-15025

I certify that:

1.     Pursuant to >Fed. R. App. P. 32(a)(7)(C) and Ninth Circuit Rule 32-1, the attached reply brief is 3,960 words:

_____          _/s/ Susan M. Carson_____

Dated:  May 22, 2009.          Susan M. Carson
          Supervising Deputy Attorney General